WILLIAM H. DANNAT et al., Appellants, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondents.

The system of audits and payments of accounts, provided by the act of 1873, reorganizing the government of the city of New York (chap. 335, Laws of 1873), applies to all payments from the city treasury, including payments from school moneys upon contracts of the board of education; the system provided for by the act of 1851, in relation to the common schools of said city (chap. 386, Laws of 1851), also remains in force.

To obtain payment upon such a contract, therefore, the board of education must give its draft on the city chamberlain, as prescribed in the act of 1851, which must be delivered by the payee to the finance department, as his voucher, and all the steps to final payment must be taken, as are required of other claims against the city treasury, by the act of 1873

An action can only be sustained against the city after these steps have been taken, and only in case of default on its part in omitting to discharge some duty imposed upon it by statute.

(Argued June 9, 1876; decided September 19, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of defendants, entered upon an order dismissing plaintiffs' complaint on trial. (Reported below, 6 Hun, 88.)

The complaint in this action alleged in substance that in March, 1872, one Alonzo Dutch entered into a contract with the "school trustees of the Tenth ward of the city of New York," who were acting under the authority of the department of public instruction, by which plaintiffs agreed to do the carpenter work for a new school-house, about being erected, at a price stipulated, payable in installments. That, in April, 1873, Dutch executed and delivered to plaintiff, for lumber furnished, an order on the board of public instruction directing said board to pay plaintiff $1,350, when the next payment under the contract became due, and charge the same to account of said contract, which order was duly presented to and left with said board. That in June, 1873, the next payment became due to Dutch, under the contract, to wit., an installment of $4,000. That plaintiffs presented their claim to the comptroller of the city, and twenty days thereafter demanded of him an adjustment of their claim, but that he neglected and refused to adjust or pay the same.

Upon the trial, defendants' counsel moved to dismiss the complaint on the opening of plaintiffs' counsel, upon the ground that the city corporation was not liable for the acts of the department of public instruction, which motion was granted and plaintiffs' counsel duly excepted.

*John H. Hand* for the appellants. The order upon which this action was brought, and the notice to defendant of the consideration and purposes of it, operated as an equitable assignment of the fund to become payable to Dutch. (3

Kent's Com., 74; Edw. on Bills, 143; Story on Bills, § 46; *Shaver* v. *W. U. Tel. Co.*, 57 N. Y., 459; *Parker* v. *City of Syracuse*, 31 id., 376.) Being an equitable assignment, it was not necessary it should be accepted in writing; notice was sufficient. (31 N. Y., 376; *Hall* v. *City of Buffalo*, 1 Keyes, 193; *Storer* v. *Sherman*, 3 id., 620; *Field* v. *Mayor, etc.*, 2 Seld., 179; *Shuttleworth* v. *Bruce*, 7 Robt., 160.) An equitable assignment of a part of a debt is valid. (*Taylor* v. *Bates*, 5 Cow., 476; *Pattison* v. *Hall*, 9 id., 747; *Morton* v. *Naylor*, 1 Hill., 583; 2 Seld., 179.) The fact that the fund drawn upon was not due at the time is immaterial. (*Crocker* v. *Whitney*, 10 Mass., 319; *Cutts* v. *Perkins*, 12 id., 211; *Master* v. *Miller*, 4 T. R., 343.) The notice and order were delivered in due season. (Laws 1873, 196, § 2; *Campbell* v. *Sun. Ins. Co.*, 4 Bosw., 298; *Coml. Bk.* v. *Ives*, 2 Hill, 355.) Defendant is liable to plaintiffs for the full amount claimed. (*Parker* v. *City of Syracuse*, 31 N. Y., 376; *Hall* v. *City of Buffalo*, 1 Keyes, 193–199; *Lowery* v. *Steward*, 25 N. Y., 239; *Harris* v. *Clark*, 3 id., 93.)

*Francis Lynde Stetson* for the respondent. Defendant was not liable. (*Miller* v. *Mayor, etc.*, 3 Hun, 35; *Ham* v. *Mayor, etc.*, 5 J. & S., 458; *Schreyer* v. *Mayor, etc.*, 7 id., 1; *Terry* v. *Mayor, etc.*, 8 Bosw., 504; *Treadwell* v. *Mayor, etc.*, 1 Daly, 123; *Gildersleeve* v. *Bd. of Education*, 17 Abb., 201.) Defendant may properly disclaim any liability for a department which exists not for its benefit, but for that of the State at large. (2 Dil. on Mun. Corp., § 772; *Russell* v. *Mayor, etc.*, 2 Den., 473, 481; *Martin* v. *Mayor, etc.*, 1 Hill, 545; *Bank of Com.* v. *Mayor, etc.*, 43 N. Y., 84; *Lorillard* v. *Monroe*, 11 id., 392, 396; *Atwater* v. *Baltimore*, 31 Md., 462; *Hafford* v. *New Bedford*, 82 Mass., 297; *Fisher* v. *Boston*, 104 id. 87; *Walcott* v. *Swampscott*, 83 id., 101; *Buttrick* v. *Lowell*, id., 172; *Maxmilian* v. *Mayor, etc.*, 4 T. & C., 491.)

EARL, J. The sole question to be determined upon this appeal is whether the city of New York, can be sued directly

upon a contract made with the department of public instruction of the city, in the year 1872, for building a school-house. The money sought to be recovered in this action is alleged to be a portion of one of the installments due under the contract which has been assigned or made payable to the plaintiffs by the original contractor. The action for the present purpose must be treated as if it had been brought by the original contractor directly upon the contract to recover money due thereon.

In 1851 (chap. 386 of the Laws of that year) an act was passed "to amend, consolidate, and reduce to one act the various acts relative to the common schools of the city of New York." By that act a board of education was created, and clothed with the powers and privileges of a corporation for the purposes of the act. It was placed substantially in charge of the whole common-school system of the city. It was empowered to take and hold property, both real and personal, for the purposes of public education in the city. The money to defray the expenses of the city school system, aside from that received from the State, was to be raised by the board of supervisors of the county of New York, by taxation. But in anticipation of the taxes thus to be imposed, the common council of the city might borrow the money. The money thus raised by taxation or loan was to be placed in the city treasury. (§§ 3, 15, 16, 19, 28.) Section 16 provided how the money could be drawn from the treasury for any of the purposes contemplated by the act, and that was by the draft of the board of education, signed and drawn in the form specified upon the city chamberlain.

Under the system thus provided, there was but one way for the board of education to discharge the obligations assumed by its contracts, and that was by a draft drawn as specified in section 16 upon the city chamberlain, and so long as it was willing to give such a draft, its creditors could make no further claim upon it. If it was willing to give the draft and had done all the law required of it, it could not be sued. It could not draw the money, as the draft is required to be

made payable to the person entitled to receive the same, and hence a suit to compel it to pay would be an idle proceeding and in contravention of the statute. But if it refused to give the draft, then the creditor's remedy would be against it. If the claim was undisputed he might by *mandamus* compel the giving of the draft. If the claim was disputed he could sue the board of education in its corporate capacity, and having thus established his claim, then procure his draft. But he would have no claim against the city until he had in some way obtained such a draft as the law required. When he came with such a draft, it would be the duty of the chamberlain to pay. If he refused, having the funds in the treasury, he could be compelled by *mandamus* to pay, or could, probably, in an ordinary action, be made presumably liable for his misfeasance. So far there could be no action against the city. It had not done any thing or omitted any thing to make it liable. It could not be sued until there was some default on its part. But if the city had improperly omitted to provide the funds in the cases in which it is required by the statute to do so, and the chamberlain refused to pay the draft on that account, then the city could probably be sued, for then it would be in default.

If, therefore, the plaintiff were obliged to rest his case under the statute of 1851, he would certainly fail, because none of the conditions appear which would entitle him to an action against either the city or the board of education.

It must now be inquired whether the plaintiff's condition is bettered by any of the subsequent changes in the law. In 1870, by chapter 137 of the laws of that year, the local government of the city of New York was reorganized, and various departments of the city government were constituted, but the board of education, as previously constituted, was left untouched. By chapter 574 of the Laws of 1871, the prior act was amended so as to add another department to the government of the city, called the "department of public instruction," and that department took the place of the board of education, and was clothed with the same powers and charged with the same duties. By chapter 112 of the Laws of 1873, there was

another change in the school system of the city, and the department of public instruction was abolished and a board of education again constituted, with the same powers and duties as before. During all this time the main features of the statute of 1851 remained in force, and the principal changes were in the mode of selecting the various school officers. In the year 1873 (chapter 335) the city government was again reorganized and divided into various departments, but the board of education was left substantially untouched, with its powers and duties in the main defined in the law of 1851. Under that act, as amended by chapter 757 of the Laws of the same year, additional and different provisions were made for raising the moneys needed to defray the expenses of the school system of the city. But all such moneys, when needed and raised, were, as before, to be paid into the city treasury, like all the other moneys raised for the benefit of the city. A finance department was created, at the head of which was the comptroller. In this department was an auditing bureau, which, under the supervision of the comptroller, "shall audit, revise and settle all accounts in which the city is concerned as debtor or creditor, and which shall keep an account of each claim for or against the corporation, and of the sum allowed upon each, and certify the same to the comptroller, with the reasons for the allowance; the chief officer of which shall be called auditor of accounts." In the same department was the chamberlain, whose duties are particularly defined in sections 29, 34 and 35; he was required to receive all moneys which should be paid into the city treasury, and deposit them in such banks and trust companies as should be designated by him and the mayor jointly, and no moneys could be paid out of the treasury, except upon warrants drawn by the comptroller and countersigned by the mayor; and no money could be drawn from the banks or trust companies, except by checks subscribed by the chamberlain and countersigned by the comptroller; but before any warrant could be drawn for the payment of any money, a voucher for the amount must have been examined and allowed by the auditor, approved by the

comptroller, and filed in the department of finance. This system of payments clearly applied to all payments from the city treasury, and no moneys could be drawn therefrom except in compliance therewith. The clear and explicit language used, and the manifest purpose of the provisions are such that it cannot be supposed that the school moneys were to be excluded from the system so carefully devised. That they were not, is made clear by the amendment to section 29, which provides as follows: "Wages and salaries, including payments for the board of education, may be paid upon pay-rolls, upon which each person named thereon shall separately receipt for the amount paid to such person; and in every case of payment upon a pay-roll, the warrant for the aggregate amount of wages and salaries included therein may be made payable to the superintendent, principal teacher, foreman, or other officer designated for the purpose." This provision shows that it was the understanding of the legislature that the moneys for school purposes were to be paid out of the city treasury in the same manner as other moneys; and this provision was intended to dispense with many warrants where one could be made to answer the purpose.

There is no trouble to harmonize the systems of 1851 and of 1873 as to payments of moneys for school purposes, and the two systems can well work together. The board of education must give its draft on the chamberlain, as prescribed in the law of 1851. The payee must take it to the finance department as his voucher, and it must there pass through the auditing bureau to the comptroller, and go through with all the steps to final payment, which are required of every other claim against the city treasury. So, now, as before, the board of education discharges its duty when it gives its creditor a draft, and the various city officers in the finance department can be compelled to do their several duties by *mandamus;* and the city can be sued only in case of default, on its part, in the discharge of some duty or obligation imposed upon it by statute.

It is clear, therefore, that the plaintiff was not, upon any

facts which appear in this record, in a condition to maintain an action against the city, and the judgment must be affirmed with costs.

All concur; ALLEN, J., concurring in result.

Judgment affirmed.