FRANCIS SWIFT, Appellant and Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent; THE POLICE DEPARTMENT OF THE CITY OF NEW YORK, Appellant.

Where a particular mode of discharging the obligations of a municipal corporation is provided by law, that mode must be pursued ; and it is only when the corporation is put in default in omitting to discharge some duty imposed upon it by statute after the proper steps have been taken, that an action will lie against it, unless it has by some act of its own, outside of the original indebtedness, rendered itself liable.

*It seems* that under the charter of the city of New York, of 1873 (chap. 335 of the Laws of 1873), although the power of incurring obligations for street cleaning is conferred upon the police department, yet as that department exercises the power simply as one of the executive branches and instrumentalities of the city government and on its behalf, the duty of providing means for their payment and of paying them resting upon the corporation, it could be treated as the debtor ; and an action would be maintainable against it.

*Maxmilian* v. *The Mayor* (62 N. Y. 160), and *Ham* v. *The Mayor* (70 id. 463), distinguished.

The police department, however, having been by the act supplementary to the charter (chap. 755 of the Laws of 1873) intrusted with the payment of its own expenditures through its own treasurer, an action would not lie in the first instance against the corporation for an indebtedness incurred by the street department.

The remedy of the creditor against the police department is by mandamus, not by action.

An action is not maintainable against a department of a city government. Plaintiff was employed by the police department in March, 1874, to remove the garbage from the streets at an agreed compensation of $800 per month ; the employment terminable at the pleasure of the department, and it was so terminated in July, 1874. Plaintiff's bills were paid for two months. For the residue of the time they were rendered, but not paid. From March, 1874, to January 17, 1877, there was upon the books of the street cleaning bureau of the police department an unexpended balance of appropriations for the year 1874, more than sufficient to pay plaintiff's claim; this was paid into the city treasury on the day last named. Plaintiff duly presented his claim to the comptroller and demanded payment, which demand was not complied with. In an action to recover the balance unpaid, *held*, that the action was not maintainable against the police department ; but that as it appeared that at the time plaintiff's claim accrued there was in the street cleaning department moneys sufficient and legally appropriated to the payment thereof, and as after notice thereof the department paid this fund into the city treasury, where, so far as appeared, it still remained, it constituted a specific fund upon which the law impressed a trust for the payment of his claim which the plaintiff was entitled to have so applied; and that as the corporation took the fund with notice of the trust and of plaintiff's claim, an action was maintainable against it to compel the execution of the trust.

Also *held*, that the contract for the work was not within the provision of said charter (§ 91), providing that where work is necessary to be done to complete or perfect a particular job for the corporation, involving an expenditure of over $1,000, the same shall be let by contract, after advertisement, to the lowest bidder ; as the work here was not done to complete any particular job, and it did not necessarily involve an expenditure of more than $1,000.

*Swift* v. *The Mayor* (17 Hun, 518), reversed.

(Submitted November 18, 1880 ; decided January 25, 1881.)

THESE are cross appeals from a judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 22, 1879, affirming a judgment in favor of plaintiff against defendant, the police department of the city of New York, also a judgment in favor of defendant, the mayor, etc., against the plaintiff. (Reported below, 17 Hun, 518.)

This action was brought to recover a balance alleged to be

due the plaintiff under a contract made with the police depart-
ment for removing garbage, etc.

The facts appear sufficiently ·in the opinion.

*William Hildreth Field* for appellant. The police depart-
ment, being specially charged by law with the duty of cleaning
the streets, and being provided with the necessary funds to
meet the necessary expenses incurred, is liable. (Laws of 1872,
chap. 677 ; Laws of 1873, chap. 335, § 67.; *N. Y. Balance
Dock Co.* v. *Mayor*, 8 Hun, 247 ; *Maxmilian* v. *Mayor*, 2
id. 160.) The city, having received the unexpended appropria-
tion of the street cleaning department for the year 1874, to-
gether with the benefit of the work, has made itself liable for
his expense. (*Moore* v. *Mayor*, 73 N. Y. 238.)

*William C. Whitney* for respondent. The police depart-
ment is an executive department of the municipal government.
(Laws of 1873, § 26, chap. 335, p. 491.) Defendant, the mayor,
etc., is not liable for a work or supply furnished without the re-
quirements of the charter being observed by reason of an implied
liability to pay for work and supplies actually furnished and used.
(*McDonald* v. *The Mayor*, 68 N. Y. 21.) The authority to clean
streets and remove garbage from the city belongs to the police
department. (Laws of 1872, chap. 677, p. 1623 ; Laws of 1873,
chap. 335, § 67 ; Laws of 1870, chap. 137, § 104 ; *Greene* v.
*Mayor*, 60 N. Y. 306 ; *Matter of Robbins.*) The city is not
responsible for the contracts of the department of police.
(*Ham* v. *Mayor*, 70 N. Y. 463 ; *Dannatt* v. *Mayor*, 66 id.
586 ; *Maxmilian* v. *Mayor*, 62 id. 160.) The department of
police in the city of New York can neither sue nor be sued,
and no judgment should have been directed against such de-
partment. (*N. Y. Balance Dock Co.* v. *Mayor*, 8 Hun, 247.)
The remedy of the plaintiff is by *mandamus* against the board.
(*People ex rel. Satterlee* v. *Bd. of Police*, 75 N. Y. 38.)

RAPALLO, J. In March, 1874, the plaintiff was employed
by the police department to remove from the city the accumu-
lations of garbage resulting from the cleaning of streets, and

the compensation agreed upon was at the rate of $800 a month so long as his employment should continue. This mode of removal of the garbage was experimental and, therefore, his employment was not for any fixed time, but was terminable at the pleasure of the department. In pursuance of this employment he rendered the stipulated service from March 23, 1874, until July 17, 1874, when his employment was terminated by order of the board. No fault is found with the manner in which the service was performed. His bills for the first two months were duly audited and paid. His bills for the residue of the time were rendered but not paid. From March, 1874, to January 17, 1877, there was upon the books of the street cleaning bureau of the police department an unexpended balance of the appropriation for the year 1874 amounting to upwards of $19,000, and on the 17th January, 1877, this sum was paid by the police department into the city treasury.

The plaintiff duly presented his claim to the comptroller on the 17th of April, 1876, and demanded payment, but no part of it has been paid.

He claims in this action to recover $1,466.67 for his compensation from May 23 to July 17, 1874, at the stipulated rate of $800 per month, with interest. The court, on the trial, dismissed the complaint as to the corporation, but directed a verdict in his favor against the police department. Both parties appeal.

On the appeal of the police department the main question which arises is, whether it is capable of being sued? On the appeal of the plaintiff the questions arise, first, whether the corporation of New York is liable upon obligations incurred by the police department for cleaning the streets, and if so, how such liability can be enforced; and, secondly, whether the work performed by the plaintiff came within the provisions of section 91 of the charter of 1873, Laws of 1873, chapter 335?

As these questions arise under the provisions of that charter, a brief reference to them is necessary.

By section 1, the mayor, aldermen and commonalty of the

city of New York are declared to be a body corporate, with all the powers and privileges theretofore held by it and not modified or repealed. It cannot be doubted that keeping the streets in order and providing for cleaning them, including the removal of garbage therefrom, are among these powers.

By section 2, the legislative powers of the corporation are vested in the common council, and by section 19, its executive power is vested in the mayor and officers of the departments thereby created. The heads of these departments are appointed by the mayor with the consent of the board of aldermen, and are required to report their operations to him, and are removable by him for cause subject to the approval of the governor. (§§ 25, 26, 27.)

Among the legislative powers of the common council specially enumerated, is that of regulating the cleaning of the streets. (§ 18, subd. 8.) Among the departments created, is the police department, and the executive duty of cleaning the streets is, by section 67, imposed upon this department of the corporation. For the performance of this duty it is required to establish a bureau of street cleaning, and an inspector who shall, under the supervision of the board of police, have charge of the cleaning of the streets and public places, and he is vested with the powers and duties formerly reserved to or imposed upon the street inspector in respect to street cleaning, and is required to file with the comptroller monthly a statement showing the number of persons employed each day in the preceding month, and their salary or compensation.

For the purpose of defraying the expenses incurred by the several departments, a board of estimate and apportionment is established, whose duty it is annually, to make a provisional estimate of the amount required to pay the expenses of conducting the public business of the city and county in each department and branch thereof for the ensuing year. This estimate is to show in detail the aggregate amount allowed to each bureau. After the revision and correction provided for by the charter, this estimate is to become final, and the several sums thereby become appropriated to the several purposes and

departments therein named, and the aggregate amount is to be raised by tax.

No expense is to be incurred by any of the departments or their officers, unless an appropriation shall have been previously made covering it. (§ 89.) All contracts are to be made by the appropriate heads of departments (§ 91), and where the amount is not such as to require a contract no expenditure can be made unless the necessity thereof is certified by the appropriate head of department and an appropriation made. (§ 92.)

All payments on behalf of the corporation are to be made by the finance department, the head of which is the comptroller, and this department has control of the fiscal concerns of the corporation. All accounts rendered to or kept in the other departments are subject to the revision of the finance department, which is empowered to settle and adjust all claims in favor of or against the corporation, and all accounts in which the corporation is concerned as debtor or creditor. (§§ 29, 30, 31.) In this department is a bureau for the reception of all moneys paid into the city treasury and the payment of all warrants drawn by the comptroller and countersigned by the mayor, the chief officer of which is the chamberlain. (§ 33, subd 7.) By section 34 authority is impliedly given to pay judgments against the corporation by providing that warrants should only be drawn on vouchers for the expenditure, audited, approved and filed, except in the case of judgments, in which case transcripts shall be filed, and it is provided by section 105, that no action shall be maintained against the corporation unless the claim upon which the action is brought has been presented to the comptroller and he has neglected, for thirty days after such presentment, to pay the same.

If the cleaning of the streets by the police department were carried on under this general system, and the obligations incurred therefor were payable by the finance department of the corporation, there would be little difficulty in holding that where the necessary appropriation had been made, and all the conditions required of the creditor had been performed, he

could, in case of non-payment, maintain an action for the amount due him, against the corporation.   The right to maintain actions upon demands against it is expressly recognized, and although in the case of street cleaning the power of incurring the obligations is conferred upon the police department, yet that department exercises the power simply as one of the executive branches and instrumentalities of the city government created for the purpose of performing a duty of the corporation, and the obligations are incurred in its behalf, and if the duty not only of providing means for their payment, but also of paying them out of its treasury through its finance department, rested upon the corporation, I can see no reason why it should not be treated as the debtor and suable as such.   The cases of *Maxmilian* v. *The Mayor* (62 N. Y. 160) and *Ham* v. *The Mayor* (70 id. 463) do not affect this question.   Those were actions for damages resulting from negligence, and it was held that as the persons guilty of the negligence were not the servants of the corporation, not being either employed or removable by it, or engaged in the performance of any corporate duty, the city was not liable for their negligence.   But the ultimate responsibility of the corporation upon contracts entered into, or obligations legally incurred by, the departments of the city government for the benefit of the corporation and payable by the finance department out of the city treasury is not denied in those cases or any other that has been cited.

The general system provided by the charter of 1873 for the payment of expenses or obligations incurred by the several departments is, however, departed from in the case of the police department.   By the act supplementary to the charter (chap. 755 of Laws of 1873, § 7), the police department is intrusted with the payment of its own expenditures, through its own treasurer.   By this section the comptroller is required to pay over to the treasurer of police the total amount annually estimated, levied, raised and appropriated for the support and maintenance of the police department and force, on its requisition (not exceeding one-twelfth part of the total in any one month), and the board through its treasurer is authorized to pay

all obligations lawfully incurred by or by authority of the board, and it is its duty, if required, to transmit duplicate vouchers for such payments to the finance department.

Under this special system it is very clear that an action will not lie in the first instance against the corporation for an indebtedness incurred by the police department. There must be an appropriation, to create a liability, and if the comptroller pays the sum appropriated to the treasurer of the police department, he has performed his whole duty. The creditor must follow it and look to it for his pay, and if the police department refuses to audit his claim and order payment by its treasurer, the remedy of the creditor is by *mandamus.* If the police department refuse to make a requisition for funds from the comptroller when entitled thereto, or the comptroller refuses to pay them over to the treasurer of police, the directions of the charter in those respects can be enforced by the same process, and in this manner the creditor, if justly entitled, can obtain payment in the manner provided by the charter. Where a particular mode of discharging the obligations of municipal corporations is provided by law, that mode must be pursued; and it is only when the corporation is put in default in omitting to discharge some duty imposed upon it by statute after the proper steps have been taken, that an action will lie (*Dannat* v. *The Mayor,* 66 N. Y. 585), unless indeed it has by some act of its own, outside of the original indebtedness, rendered itself liable, a point which will be considered hereafter.

The appeal of the police department must be sustained. It is a mere department or subdivision of the city government, and is not itself a body corporate, and there is no statute brought to our notice authorizing actions to be brought against it, or providing for the payment of any judgment against it. In *N. Y. Balance Dock Co.* v. *The Mayor* (8 Hun, 247), it was held that the department of public charities could not be sued, although it has the same power of drawing for and disbursing the sums appropriated to its use, and in *People ex rel. Satterlee* v. *Board of Police* (75 N. Y. 38), a *mandamus* against the department, to compel the

board to draw a requisition upon the comptroller for a sum sufficient to pay a balance due a police surgeon for his salary, was sustained; showing impliedly that the appropriate method of obtaining payment from that body is to compel it to perform its statutory duty by *mandamus*, and not by action.

This point requires the reversal of the judgment against the police department, but there is a further question whether there are not circumstances in this case which entitle the plaintiff to maintain his action against the city. It appears and is admitted, that at the time the plaintiff's claim accrued there was in the street cleaning department a sum much more than sufficient to pay the plaintiff's claim, and legally appropriated to the payment thereof, in case his claim was valid, and that it remained there until long after both the police department and the finance department had notice of his claim, and that with such notice the police department paid this fund into the city treasury, and it was there received by the finance department, as an unexpended balance; and for all that appears it remains there still. This was doubtless done upon the supposition that the plaintiff's claim was invalid because the work was not contracted for in the manner prescribed by section 91 of the charter of 1873. But if on examination this defense is found not to be sustainable, this unexpended balance was legally appropriated to its payment, and it constituted a specific fund which the plaintiff had the right to have so applied, and the application of which the court would have compelled. As before shown the only remedy of the plaintiff was to follow this fund and the law impressed upon it a trust for the payment of his claim out of it. It was raised for the express purpose of paying obligations incurred in cleaning the streets. It was placed by the finance department in the hands of the police department for that purpose and no other; the duty of so applying it was imposed by law, and the creditors had the legal right to look to that fund for their payment and in fact were confined to the security which it afforded them. Instead of making the application they returned it to

the corporation, who, if not technically, was in substance the real debtor, who took it with notice, not only of the trust, but of the plaintiff's claim upon the fund.   I think it is a proper case for the application of the well-settled rule that one who receives a fund impressed with a trust, and receives it with notice of the trust, is bound and can be compelled to execute it.

By applying this equitable and well-established rule the circuitous method of compelling the finance department to pay the money back to the police department and then compelling that department to order its payment by their treasurer and then compelling him to pay the plaintiff, will be avoided and the same just result will be attained.   The complaint contains all the allegations necessary to show that the plaintiff is entitled to this relief and that the money paid into the city treasury, or so much thereof as is necessary to pay the plaintiff's claim, equitably belongs to him, and can be treated as money received to his use.

The only objection made by the defense, on the trial, to the plaintiff's right to payment of his claim, was that the work was not contracted for pursuant to section 91 of the charter of 1873.   No other point was made upon the trial in this respect. That section provides that whenever any work is necessary to be done to complete or perfect a particular job for the corporation and the several parts of said work shall together " involve the expenditure of more than one thousand dollars," the same shall be by contract made by the appropriate head of department with the lowest bidder, after advertisement inviting proposals.

The work in question is conceded by this objection to have been done for the corporation, but it was not done to complete any particular job, nor did it necessarily involve the expenditure of more than $1,000.   The employment was for a service continuous in its character, but terminable at the pleasure of the employer.   The mere fact that it might be continued so long as to cost the city in the aggregate more than $1,000  did not, we think, bring it within the provisions of the section.   It was intended to apply to contracts for particular jobs involving

a liability to pay the amount named, not to services for an indefinite period involving no obligation on the part of the city to continue the service. ·If so, every employment of a laborer or other servant at a certain rate per month might be brought within it, because, if continued long enough, the wages might in the aggregate amount to more than $1,000. In this case the agreement was that so long as the plaintiff should be retained in the employment he should receive pay at the rate of $800 per month. There was no express obligation to retain him even for a whole month, but if one could be inferred, the amount involved did not exceed $1,000.

The judgment against the police department, and the judgment in favor of the corporation should both be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgments reversed.