## JAMES GREGORY, APPELLANT, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, RESPONDENT.

*Board of excise in New York — an employe thereof must apply for a warrant upon the comptroller before he can sue the city — an unreasonable refusal of the board to give the warrant relieves him from procuring it.*

Upon the trial of this action, brought to recover a balance of salary claimed to be due to the plaintiff, evidence was given tending to show that the plaintiff had been employed as an inspector by the board of excise commissioners of New York, and had been paid as such up to December 15, 1880; that in December, 1880, he received a notice that he had been suspended, but that considering himself still an inspector he tendered his services nearly every day from December, 1880, to September, 1881, and was ready and willing to perform his duties, but was not allowed to do so; that in September he demanded a voucher or certificate on which he might receive his salary from the comptroller; that in reply to his demand the excise commissioners said that they considered his suspension a dismissal and did not give him the voucher; that he demanded his salary from the comptroller.

*Held*, that in dismissing the complaint, upon the ground that the plaintiff should have procured a *mandamus* compelling the board of excise to give him a warrant upon the comptroller before suing the city, the court erred.

That the question as to whether the refusal of the board of excise to give him a warrant, upon the ground that they considered his suspension was equivalent to a dismissal, was not an unreasonable refusal, should have been submitted to the jury, and that if they found it was unreasonable the plaintiff might maintain his action. (DAVIS, P. J., dissenting.)

*Bancker* v. *Mayor* (8 Hun, 409) followed; *Dannat* v. *Mayor* (66 N. Y., 585) distinguished.

APPEAL by the plaintiff from a judgment, entered upon an order made at the circuit dismissing his complaint.

*Elliott Sandford*, for the appellant.

*D. J. Dean*, for the respondent.

BRADY, J. :

This action was brought to recover a balance of salary claimed to be due to the plaintiff as an inspector employed by the board of excise commissioners in this city from December 1, 1880, to September 1, 1881, at the rate of $1,000 per annum. The defendant set up among other things that by a resolution of the board of excise duly passed on the 15th day of December, 1880, the plaintiff was suspended from duty and pay from that date, and that by a subsequent resolution of the board duly passed on the 18th of January, 1881, he was removed from his position as inspector, such removal to take effect from the date of his suspension, and further that he acquiesced in such suspension and removal and abandoned all claim to the position of inspector, and performed no services as such between the 15th of December, 1880, and the 15th of December, 1881.

The plaintiff testified that he was inspector from 1876 until 1880 ; that he received $1,200 a year until toward the end of 1879, when his salary was reduced to $1,000 ; that he was paid up to the 15th of December, 1880, and that from that time to the 1st of September, 1881, he received nothing ; that he demanded his pay from the excise board and from the comptroller ; that there remained due to him about $709.30 ; that in December, 1880, he received notice of his suspension, but considering himself still inspector he tendered his services nearly every day from December, 1880, to September 1, 1881, and during that period was always ready and willing to perform his duties ; that he regarded his notice of suspension as a temporary thing and, therefore, tendered his services day after day expecting to go back or to be put again on duty. He said on cross-examination that he was not allowed to perform the duty of inspector, although he went and tendered his services. It further appeared that he, in connection with others who had been suspended, demanded their restoration in writing, and that the plaintiff, in writing about the ninth of September, sent a communication to the board of excise in which he stated that he was advised that the board had no power to suspend him without pay ; that he had been

ready and willing at all times to perform the duties of his position, and having performed all those that had been required of him he demanded a voucher or certificate on which he might receive from the comptroller, as provided by statute, his salary out of the funds in the treasury. Thereupon it was admitted on the part of the defendants that the board did not give him any voucher.

The plaintiff further testified that in reply to his demand which had been served on the board of excise they said they considered the suspension a dismissal, and did not give him a voucher for which he asked. It was also shown on behalf of the plaintiff that an appropriation had been made by the board of estimate and apportionment for the payment of the salaries and expenses of the employes of the board of excise, and the general expenses of the board from May 1, 1880, to May 1, 1881, and on the 30th of December, 1880, an additional appropriation was made and a balance of $23,917.51 remained unexpended on the 1st of January, 1881, and a balance of $3,708.02 remained unexpended on the following first of May; and that the appropriation made for the same purpose in the following year from May 1, 1881, to May 1, 1882, was $71,220, of which a balance of $47,605 remained unexpended on October 1, 1881. Upon the cross-examination of the witness, who was called upon to show the details of these appropriations, he said that the balances had been paid out in current expenses pursuant to requisitions or vouchers coming from the board of excise; and on being asked this question, "On such requisitions the balances you speak of have since all been paid out?" he answered, "I don't know; I presume so." The effect of which testimony was to leave the fact apparent that there was a balance out of which the plaintiff's salary, if he were entitled to it, could have been paid.

The defendant's counsel after the defendant had established the facts detailed, then moved to dismiss the complaint upon the ground that the demand made by the attorney for the other side shows the theory of the law concerning a demand of that kind; that he is, under the adjudication of the Court of Appeals in *Dannat* v. *The Mayor*, bound to make his demand on the board that employs him, and in case they refuse to draw a requisition on the special fund which is in the comptroller's hands to be paid out on their requisi-

tions, his quarrel is with them, and he has no connection with the city treasurer or with the fund in the city treasury.

The court granted the motion to dismiss, to which ruling counsel for the plaintiff duly excepted.

The question presented is whether the dismissal of the complaint was justified by the decision in the case of *Dannat* v. *Mayor* (66 N. Y., 585). In that case it was held that under the act of 1873, notwithstanding the apparent separate and independent organization of the board of education, it was necessary for a creditor of that board to obtain its draft upon the comptroller, which must be presented to the finance department as the voucher, and must there pass through the auditing bureau to the comptroller, and go through all the steps to final payment which were required of every other claim against the city treasury. It must be remembered, also, that by the act of 1851 (chap. 386, Laws of that year) it was provided, by section 16, that no money appropriated for the purposes of education could be drawn from the treasury except by a draft of the board of education signed and drawn in the form specified.

Under the act of 1874 (chap. 642, Laws of that year) and which was amendatory of other acts of the legislature upon the subject, it is provided that the commissioners of excise shall receive a salary not to exceed $5,000 a year, to be fixed by the board of estimate and apportionment of this city, who shall annually fix such amount as may be necessary for the hire of employes, rent and other necessary expenses of the board of commissioners, which shall be paid out of the moneys received for licenses. And these moneys received for licenses, it was provided by the act of 1870, of which the act of 1874 was amendatory, should be deposited with and paid over to the chamberlain within thirty days after their receipt.

The manner in which the employes shall be paid is not expressed in the act of 1874, but it is supposed that the act of 1873, of which the decision in *Dannat* v. *The Mayor* is predicated, determines the system and is controlling. This would render it necessary for the plaintiff in this action to proceed by *mandamus* to compel the excise board to give him the voucher, unless there exists some element in the case by which such a course becomes unnecessary. The learned counsel for the appellant thinks that the plaintiff's demand upon the excise board for a voucher has relieved him from the necessity

of adopting the course suggested, because the refusal of the board to give it was unreasonable. And this view seems to be sustained by the case of *Bancker* v. *The Mayor* (decided in this department and reported in 8 Hun, p. 409; see, also, upon the same subject *Bowery National Bank* v. *The Mayor*, 63 N. Y. 336.) Presiding Justice DAVIS in the former case, in a dissenting opinion said : " If the city authorities on such facts being shown to them had refused to allow and pay the demand notwithstanding the unreasonable and illegal refusal of the commissioners to approve the amount, then the plaintiffs might upon proper proof maintain their action."

The case of *Bancker* v. *The Mayor* was one brought to recover for work, labor and services performed in the building of the Harlem court-house. The plaintiffs prepared bills and presented them to the commissioners for approval, in pursuance of section 3 of chapter 410 of the Laws of 1870, authorizing the construction of the court-house ; but the commissioners refused to approve of them, giving as a reason that they had no personal knowledge of the matter. The court held that it was an unreasonable refusal and dispensed with the necessity of obtaining their approval.

In this case the refusal to give the voucher demanded was placed upon the ground that the commissioners considered the suspension of the plaintiff to be a dismissal. There is a marked distinction between this case and *Dannat* v. *The Mayor* (*supra*), therefore. There was no attempt in that case made to obtain the voucher from the board of education. The action was brought directly upon a contract made by the department of public instruction for building a school-house, and inasmuch as no attempt had been made to obtain from the board of education the proper voucher, the court held that the plaintiff was not, upon the facts which appeared in the record, in a condition to maintain the action. The case was, therefore, not decisive of this one. Here it appeared that the claim was not only presented to the board of excise of which the plaintiff was an employe, and a voucher demanded but refused, but that the claim was also presented to the comptroller ; and, further, that by the act of the legislature, under which the board of excise was created, a fund was provided for the express purpose of paying claims kindred to that of the plaintiff, and that the refusal of the board to give the voucher may have been unreasonable, a fact which,

if found in favor of the plaintiff, would, under the authority of *Bancker* v. *The Mayor* (*supra*), require a consideration of the claim notwithstanding the decision in *Dannat* v. *The Mayor*.

This question was not considered. The motion to dismiss was predicated chiefly, indeed exclusively, upon the rule laid down in *Dannat* v. *The Mayor*, which we have seen presents very different elements from those distinguishing the case at bar.

In conclusion it may be said that it is a matter of no consequence, so far as the plaintiff's claim is concerned, whether the board of excise is a State board or a branch of the city government. The money out of which he was to receive compensation for his services was deposited in the treasury of the city, and they were directed to reserve it for such payment.

For these reasons the judgment appealed from should be reversed and a new trial ordered.

DANIELS, J., concurred in the result.

DAVIS, P. J. (dissenting):

I feel obliged to dissent from the conclusion of my brethren. The case is not, in my opinion, distinguishable from that of *Dannat* v. *The Mayor*. The board of excise is a body of officers created by statute charged with certain public duties over which the defendants, as a corporation, have no such control or authority as charges them with liability for the conduct of that board.

The city is to pay salaries of certain subordinates or officers of the board, but to pay them only out of a specified fund and upon specified vouchers. There is no liability upon the city without the required voucher, and the city is not responsible for any neglect or misconduct on the part of the board of excise in refusing to give the voucher. The case of *Bancker* v. *The Mayor* is not, in my opinion, at all analogous to this. In that case the special commissioners to construct the Harlem court-house were agents or servants of the city or county acting for its benefit, and not an independent body of public officers discharging official functions created and imposed by statute, and in respect of such functions independent of the city. Their improper act in refusing a certificate for work might well be regarded as the act of the city by its servants or agents, but it is

not consistent with well established principles and distinctions to so regard the action in this case of the board of excise.

I think the court at circuit was right in its ruling and should be affirmed.

Judgment reversed, new trial ordered, costs to abide event.