The judgment and conviction should be affirmed.

EDWARD T. BARTLETT, WILLARD BARTLETT and HISCOCK, JJ., concur with CULLEN, Ch. J.; GRAY and CHASE, JJ., concur with HAIGHT, J.

Judgment of conviction reversed, etc.

----

MARSHALL T. DAVIDSON, Appellant, *v.* THE VILLAGE OF WHITE
PLAINS, Respondent.

Municipal corporations — methods of paying obligations of munici-
   pal corporations — when water commissioners of a village are
   agents thereof with power to contract obligations binding on
   the village — enforcement thereof by creditor.

There is a distinction between a provision of law which prescribes how a
   creditor of a municipal corporation may obtain payment of his claim
   and one which simply prescribes the method by which the corporation
   is authorized to obtain funds with which to pay the claim, merely reg-
   ulating the internal management of the corporation itself.

As a general practice, municipal undertakings of a permanent character,
   involving great and extraordinary expense, are defrayed by the issue
   of municipal bonds, and in many, if not most, cases it is enacted that
   the proceeds of the bonds shall be devoted solely to the special public
   work authorized, but such provisions are not held to constitute a par-
   ticular mode of paying a claim.

Where the water commissioners of a village, under the provisions of a
   statute, are directed to acquire the necessary lands and easements in the
   name and on behalf of the village, and all the revenues derived from
   the supply of water are paid to the village, the relation of principal and
   agent exists between the commissioners and the village.    Although in
   such case it is the duty of a creditor to apply to the commissioners to
   audit and certify his claim, upon their refusal he is not restricted to pro-
   ceedings by mandamus but can maintain an action against the village.

The failure to allege in the complaint that the water commissioners unreasonably refused to audit and certify the claim would be ground for demurrer, but upon the trial plaintiff had a right to rely upon the admissions in the answer which show that the commissioners had repudiated all liability for the demand. (*Dannat* v. *Mayor, etc., of N. Y.,* 66 N. Y. 585; *Swift* v. *Mayor, etc., of N. Y.,* 83 N. Y. 528, distinguished.) *Quære,* as to whether mandamus would lie in such case. *Davidson* v. *Village of White Plains,* 121 App. Div. 287, reversed.

(Argued November 30, 1909; decided January 11, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 21, 1907, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank Verner Johnson* for appellant. The action was properly brought against the village of White Plains and a cause of action stated. (*Fleming* v. *Vil. of Suspension Bridge,* 92 N. Y. 368; *King* v. *Vil. of Randolph,* 28 App. Div. 25; *Pettengill* v. *City of Yonkers,* 116 N. Y. 558; *Seeley* v. *City of Amsterdam,* 54 App. Div. 9; *Bolton* v. *Vil. of New Rochelle,* 84 Hun, 281; *Walsh* v. *Mayor, etc.,* 107 N. Y. 220; *Appleton* v. *Water Comrs.,* 2 Hill, 452; *Gunnison* v. *Board of Education,* 80 App. Div. 480; 176 N. Y. 11; *F. & D. Co.* v. *City of New York,* 108 App. Div. 263; *Reilly* v. *City of Albany,* 112 N. Y. 30.)

*John M. Digney* for respondent. The method of securing payment of a claim affecting the water supply of the village of White Plains is prescribed by the statute. (L. 1896, ch. 769.) The claimant is confined in the first instance to the method of payment prescribed by the statute. (*Dannat* v. *Mayor, etc.,* 66 N. Y. 585; *Swift* v. *Mayor, etc.,* 83 N. Y. 528; *F. & D. Co.* v. *New York,* 108 App. Div. 263; *Gunnison* v. *Board of Education,* 80 App. Div. 480; 176 N. Y. 11; *Heiser* v. *Mayor,* 104 N. Y. 68; *Holroyd* v. *Town of Indian Lake,* 180 N. Y. 318.) In the event of the refusal

of the water commissioners to audit or certify the plaintiff's bill, or the refusal of the village authorities to issue a draft for its payment out of the water fund, or the refusal of the treasurer to pay such draft, the plaintiff's remedy is by mandamus. (*Dannat* v. *Mayor, etc.,* 66 N. Y. 585 ; *Swift* v. *Mayor, etc.,* 83 N. Y. 528 ; *People ex rel. McCabe* v. *Matthies,* 179 N. Y. 242 ; *People ex rel. Root* v. *Board of Supervisors,* 146 N. Y. 107 ; *People ex rel.* v. *W. S. S. R. Co.* v. *Barnard,* 110 N. Y. 548 ; *People ex rel. Wooster* v. *Maher,* 141 N. Y. 330 ; *Baird* v. *Supervisors,* 138 N. Y. 95 ; *Holroyd* v. *Town of Indian Lake,* 180 N. Y. 318.)

CULLEN, Ch. J.   The action was brought to recover the price of a pumping engine alleged to have been sold and delivered to the village of White Plains, for which defendant failed to pay.   The answer denied the sale to the defendant, alleged that the sale was to the water commissioners of the village ; that there was an agreement that the engine would do certain work ; that the pump failed to comply with the terms of the agreement, and that it was rejected by the commissioners and the plaintiff notified to remove the same. At the opening of the case the defendant moved to dismiss the complaint on the ground that the action could not be maintained against the village and that the plaintiff's remedy, if any, was by mandamus against the board of water commissioners.   The motion was granted and the judgment entered on that nonsuit has been affirmed by the Appellate Division.

The plaintiff has been defeated on the principle that where a particular mode of discharging the obligation of a municipal corporation is provided by law that mode must be pursued, the learned courts below placing their decision on the authority of *Dannat* v. *Mayor, etc., of N. Y.* (66 N. Y. 585) and *Swift* v. *Mayor, etc., of N. Y.* (83 N. Y. 528).   That this principle is correct cannot be gainsaid, but we must be careful to distinguish between a provision of law that prescribes how a creditor of a municipal corporation may obtain payment of his claim and one which simply prescribes the method

by which the corporation is authorized to obtain funds with which to pay the claim, merely regulating internal management of the corporation itself. We think the case before us does not fall within the principle of the *Dannat* or *Swift* case. In the *Dannat* case the contract was made not with the corporation but with the board of education, which discharged the governmental function of providing public instruction. Under the statutory scheme the board of education was to deliver to the creditor its draft on the comptroller, who was required to pay the same if there were funds to the credit of the board sufficient for the purpose. It was held that the action of the comptroller, if a draft were presented, was merely ministerial and could be enforced by mandamus, and that he was not required to act until the draft was procured. In the *Swift* case the contract was not that of the city but of the board of police, which had its own treasurer, to whom all the funds to be disbursed by the department were paid by the city officers. In neither of these cases was there any general obligation upon the city to discharge obligations incurred by the contracts made by those boards. The case before us is different. The water commissioners, under the statute, are directed to acquire the necessary lands and easements in the name and on behalf of the village, and all the revenues derived from the supply of water are paid to the village. That the relation of principal and agent existed between the commissioners and the village seems clear under the authorities. (*Fleming* v. *Village of Suspension Bridge,* 92 N. Y. 368; *Walsh* v. *Mayor, etc., of N. Y.,* 107 N. Y. 220.) There is no prescribed limit to the amount which commissioners are authorized to expend. The liability of the village for the obligations incurred by the commissioners is general and unlimited. They are directed from time to time to file a statement of the sums which are required by them for the purpose of the act, on the receipt of which the trustees of the village are directed to issue bonds of the village, sell the same and place the proceeds in the village treasury to the credit of the commissioners, and the clerk of the village upon the receipt of a requisi-

tion from the water commissioners is required to prepare and sign a draft for any account or bill which is presented and certified by the president and secretary of the commission as audited by it, which draft it is made the duty of the president of the village to sign "in the same manner as drafts of the village are signed." This scheme is radically different from those in the *Dannat* and *Swift* cases. The creditor gets no draft of the water commissioners on the village or its treasurer. If his claim is recognized it is the duty of the commissioners to certify to that effect to the clerk, and the creditor gets the draft of the village itself. A bond is not to be given for the particular debt or liability incurred by the commissioners, but bonds are to be sold in sufficient amount to provide a fund from which those debts or obligations can be paid. In my opinion this scheme does not provide any particular mode for the payment of the obligations of the village in the discharge of liabilities incurred in the construction and maintenance of the water plant within the true meaning of that rule. As a general practice municipal undertakings of a permanent character involving great and extraordinary expense are defrayed by the issue of municipal bonds and in many, if not most cases, it is enacted the proceeds of the bonds shall be devoted solely to the special public work authorized. But such provisions are not held to constitute a particular mode of paying a claim within the rule to which reference has been made. The case of *O'Brien* v. *Mayor, etc., of N. Y.* (139 N. Y. 345) was an action to recover on a contract made by the aqueduct commission of the city of New York for the construction of the new aqueduct. The claim was for a very large sum. The statute (L. 1883, ch. 490) provided for the issue by the city of water stock to defray the expenses of the improvement, and directed the comptroller to make payments on the certification of the commissioners. The plaintiff received no such certificate. The point was not decided, but it was assumed in the opinion that if the certificate was unreasonably refused an action would lie against the city. In principle we think the present case is similar to that of *Fleming* v. *Village of Suspension Bridge* (*supra*).

Though it was the duty of the plaintiff in the first instance to apply to the board of water commissioners to audit and certify his claim, upon their refusal to comply with the demand he was not restricted to proceedings against the commissioners by mandamus. It may be questioned whether mandamus would lie in case the claim was in dispute. However this may be, such refusal would give a right of action against the village itself. In *Reilly* v. *City of Albany* (112 N. Y. 30) the contract price was in express terms payable only out of the proceeds of the local assessment to be levied for the improvement. The common council having failed to levy a proper assessment it was held that an action against the city would lie, and that the plaintiff was not restricted to mandamus to compel the common council to impose an assessment. The same rule was held in *Weston* v. *City of Syracuse* (158 N. Y. 274). It is urged that while the complaint alleges that the claim was presented to the water commissioners as well as to the other village authorities, it does not allege that the water commissioners unreasonably refused to audit and certify the same. This objection may be well founded, and had it been taken by demurrer might properly have prevailed. But the defendant having waited till the trial of the action, the plaintiff could rely on the admissions in the answer, which showed that the water commissioners and the village had repudiated all liability for the plaintiff's demand. (*Cohu* v. *Husson*, 113 N. Y. 662; *Haddow* v. *Lundy*, 59 id. 320.) Moreover, the complaint was dismissed solely on the ground that no action could be maintained against the village, not on the ground now suggested. Had that objection been then taken, doubtless the trial court would have permitted an amendment.

The judgment should be reversed and a new trial granted, costs to abide the event.

HISCOCK, J. (dissenting). This action was brought to recover the price of materials and the value of services alleged to have been furnished to and performed for the defendant.

The complaint was dismissed on the ground that a special method and fund had been prescribed and furnished for the payment of plaintiff's claims and that, therefore, he could not in the first instance recover from the defendant on its general liability.

While some little question has been raised concerning that fact, it clearly appears that plaintiff's material and services were used and employed in constructing a plant for the supply of water in the defendant village under chapter 769 of the Laws of 1896, entitled "An Act to provide for supplying the village of White Plains with water and authorizing the issue of bonds therefor, and to create a board of water commissioners for said village." This act created and provided for the perpetuation of a board of water commissioners in said village. Said board generally was authorized to acquire real estate, water rights, etc., and to purchase materials and employ labor necessary for establishing and maintaining a water supply and was given exclusive management and control of the same. For the purpose of meeting the expenses incurred in so doing it was provided that " the said commissioners are hereby authorized and directed to file with the board of trustees of the village of White Plains, from time to time a statement of the sum or sums of money which are required by them for the purposes of this act," (section 4) and upon recipt of such statement or requisition it became the duty of the board of trustees to issue bonds of the defendant for the amount required. It was then further provided that " the proceeds thereof (said bonds) shall be placed by the treasurer of the village of White Plains to the credit of the board of water commissioners to be used by the said board of water commissioners for the purposes of purchasing, constructing, extending or adding to said water works as provided for in this act and for no other purpose whatsoever, and the said funds when so raised shall not be subject to draft or disbursement by the board of trustees for any purpose whatsoever and shall be used for the purpose of supplying water to the village as provided by this act and then only on the requisition or certificate of said board of

water commissioners. It shall be the duty of the clerk, upon receipt of a requisition from the board of water commissioners to prepare and sign a draft for each and every account or bill which is presented and duly certified by the president and secretary of said water commissioners that said account or bill has been audited by said commissioners, and it shall be and is hereby made the duty of the president of the village to sign said drafts in the same manner as the drafts for bills of the village are now signed, and when the drafts are so signed and presented to the treasurer of the village he shall pay the same from the water commissioners' account."

It was further expressly provided that in their management of the water department said board of water commissioners should have exclusive power to fix and collect water rates and that all moneys received for water rentals should be deposited to the credit of the board of water commissioners with the village treasurer and said moneys after payment of necessary expenses connected with the operation and maintenance of the water department were made applicable to the payment of the interest and principal of the bonds issued as above provided.

Plaintiff's complaint simply alleged that he had presented a written verified statement of his claims both to the board of water commissioners and to the board of trustees of the defendant and demanded payment thirty days before the commencement of the action. It alleged no other proceeding or attempt to procure payment or unreasonable conduct on the part of the defendant.

It must be assumed for the purposes of this appeal that the plaintiff has a valid claim for material and services supplied and performed in the course of the erection of water works for the defendant on the order and under the supervision of the board of water commissioners of the latter. Thus far he has been defeated on the ground that his claim was payable from a special fund to be supplied by the defendant to said board of water commissioners with which to pay such bills and that until he had used proper efforts to secure payment from

18

said fund or the village in some way had repudiated or disre-
garded its obligation to provide the same, he could not recover
against the latter on its general liability. It seems to me that
the view thus adopted by the learned courts below is proper
and should be affirmed on the facts as they appear to us.

If the statute creating the board of water commissioners of
the defendant and prescribing their powers and duties and
covering the erection and maintenance of water works does
lawfully prescribe a special method in which a contractor like
the plaintiff shall collect his pay, it is well settled that such
statute governs and must be read as a part of this contract.
This is what the statute which has been referred to appears to
me to do. It created a board of water commissioners and
while such board in a certain sense was doubtless an instru-
mentality and agent of the village it was given a very well-
defined and distinct status and it was broadly invested with all
of the powers necessary to the construction, maintenance and
operation of a water department to the exclusion of all other vil-
lage departments or officials. It was not given a separate corpo-
rate capacity by virtue of which it could sue and be sued, but in
other respects its powers were quite as complete as they well
could be. As a part of these, it had the sole power to incur indebt-
edness in constructing and maintaining the water supply and
was invested with the sole power to audit and pay claims thus
incurred through a special fund created by the sale of bonds
which was placed to its credit and could not be disbursed
except for its purposes and by virtue of its audit and draft.
In view of the other provisions on this subject it does not
seem a matter of any materiality that the proceeds of the
bonds issued by the defendant for the purpose of creating the
water fund in the first instance passed into the hands of the
village treasurer because he was compelled forthwith to deposit
them to the credit of the board of water commissioners.
Neither does it seem important that before presentation to
the village treasurer for payment from said account drafts
were to be signed by the president of the village because
before he was authorized to do this the draft must have been

signed by or in behalf of the board of water commissioners on a claim duly certified and audited by it, and after this had been done it became obligatory on the village president without discretion to sign such draft on the village treasurer. Furthermore, the provisions for the collection by the board of water commissioners of water rentals and their application after other expenses to the payment of interest and principal on the bonds emphasize the intention of the statute to make a complete financial system for the benefit of and under the control of the water department and separate and distinct from the general financial department and operations of the defendant. It was the purpose and so enacted that the board of water commissioners alone should contract indebtedness, should pay it through a special fund absolutely controlled by it, and should provide payment for the bonds whereby that fund was created so far as possible. Thus the statute provided in most precise and complete terms a special method for the payment of plaintiff's claims and which may not be disregarded by him when the time of payment has arrived.

It might happen that a municipality by fanciful and unsubstantial distinctions would attempt to give a certain form to the payment of claims which after all really would be payable under its general financial system and from its general funds and that the court would disregard such attempts in an action like this. That, however, is not this case. The statute by substantial provisions has separated the financial operations of defendant's water department from its general administration, and has clearly provided a special means of paying claims contracted by it, and there very well may be reasons for so doing. Independent of others, following the spirit of provisions which in the case of cities make water bonds a class of indebtedness by themselves, the defendant might well prefer that the cost of its water supply when constructed should not be commingled with its ordinary expenses and met from its general resources, but rather that it should be kept separate and met from a special fund created by the sale of bonds.

It is well established that a municipality may provide special

methods for the payment of claims which are chargeable against it. It is true that this provision has most often been made in the case of local improvements ultimately to be paid by taxation of property benefited, and where stipulation has been made that payments under the contract should not be payable until such taxes had been collected.

The principle, however, is not limited to such cases, but must be regarded as applicable to the payment of claims for general municipal purposes. (*Hunt* v. *City of Utica*, 18 N. Y. 442; *Weston* v. *City of Syracuse*, 158 N. Y. 274, 283; *Dannat* v. *Mayor, etc., of N. Y.*, 66 N. Y. 585; *Swift* v. *Mayor, etc., of New York*, 83 N. Y. 528.)

In the *Weston* case the rule is stated in general terms by Judge PARKER " that where a way of payment (of a municipal contract) is prescribed by statute or by contract that way must be strictly pursued."

In the *Dannat* case the plaintiff sought to recover for services and materials furnished under a contract entered into by and with the authority of the department of public instruction of the defendant for the erection of a schoolhouse. It appeared that there was in the government of the city of New York a department called the department of public instruction which in general terms had exclusive control and management of educational matters, including the erection of schoolhouses. Said department had no general sources of income and its only means of discharging obligations was through appropriations made and agreed upon in advance by designated officials of the defendant, and which amounts so appropriated were certified by said officials to the board of supervisors of the county of New York, and when raised and collected by tax were paid to the chamberlain of said city and placed in its treasury, and thence paid out on drafts drawn by said board of education. Thus the board of education was only responsible on contracts to the extent of the moneys appropriated for its purposes, and on the other hand the city of New York was ultimately responsible for the payment and for the discharge of obligations entered into by the depart-

ment of education through its obligation to make appropriations and supply funds. There was thus the case of a municipality acting through a distinct department and under obligations to provide a special appropriation for the purpose of discharging obligations entered into by said department. Under these circumstances it was decided that no action would lie against the city on the contract in suit unless and until it had failed to provide funds for the use of said department as required by statute to do. The plaintiff was not defeated on the ground that the department of education was not an instrumentality and agent of the defendant or on the ground that his contract was not in terms and name made with said city.

The *Swift* case seems fully to sustain the defendant's position in this case. In that case plaintiff sought to recover for services rendered for the street cleaning bureau, which was under the control of the police department. In the charter of the defendant were general provisions making provision for the expenses of various departments which had control of the fiscal concerns of the corporation. Among the departments of the city was the police department, charged with the establishment and maintenance of a bureau of street cleaning, an ordinary municipal function. It was written by Judge RAPALLO, " The right to maintain actions upon demands against it (the defendant) is expressly recognized, and although in the case of street cleaning the power of incurring the obligations is conferred upon the police department, yet that department exercises the power simply as one of the executive branches and instrumentalities of the city government created for the purpose of performing a duty of the corporation, and the obligations are incurred in its behalf, and if the duty not only of providing means for their payment, but also of paying them out of its treasury through its finance department, rested upon the corporation, I can see no reason why it should not be treated as the debtor and suable as such." (p. 534.) It appeared, however, that the financial affairs of the police department were not part of the general financial system

of the city.  The judge said : " The general system provided by the charter of 1873 for the payment of expenses or obligations incurred by the several departments is, however, departed from in the case of the police department.  By the act supplementary to the charter  \*  \*  \*  the police department is intrusted with the payment of its own expenditures, through its own treasurer.  By this section the comptroller is required to pay over to the treasurer of police the total amount annually estimated, levied, raised and appropriated for the support and maintenance of the police department and force, on its requisition  \*  \*  \*  and the board through its treasurer is authorized to pay all obligations lawfully incurred by or by authority of the board, and it is its duty, if required, to transmit duplicate vouchers for such payments to the finance department.  Under this special system it is very clear that an action will not lie in the first instance against the corporation for an indebtedness incurred by the police department. There must be an appropriation, to create a liability, and if the comptroller pays the sum appropriated to the treasurer of the police department, he has performed his whole duty. The creditor must follow it and look to it for his pay, and if the police department refuses to audit his claim and order payment by its treasurer, the remedy of the creditor is by mandamus.  \*  \*  \*  Where a particular mode of discharging the obligation of municipal corporations is provided by law, that mode must be pursued ; and it is only when the corporation is put in default in omitting to discharge some duty imposed upon it by statute after the proper steps have been taken, that an action will lie (*Dannat* v. *Mayor, etc., of N. Y.,* 66 N. Y. 585), unless indeed it has by some act of its own, outside of the original indebtedness, rendered itself liable."  (pp. 534, 535.)

As I have already indicated, there are no allegations in the complaint which indicate that the board of water commissioners have unreasonably refused to audit or give a draft for plaintiff's claim or that the village has repudiated or disregarded its obligations to provide a fund for the payment

thereof and, therefore, the case does not come within *Reilly* v. *City of Albany* (112 N. Y. 30, 46) or *Weston* v. *City of Syracuse* (158 N. Y. 274, 282).

The judgment should be affirmed.

Edward T. Bartlett, Haight and Willard Bartlett, JJ., concur with Cullen, Ch. J.; Gray and Chase, JJ., concur with Hiscock, J.

Judgment reversed, etc.