Lamont McLoughlin, Appellant, v. The City of New York, Respondent.

*Municipal corporation — New York city — salary of clerk.*

Appeal from an order sustaining defendant's demurrer to the complaint, and from a judgment entered thereon, dismissing the complaint.

Judgment and order affirmed, with costs. No opinion. Present — Clarke, P. J., Scott, Dowling, Smith and Davis, JJ.; Scott and Davis, JJ., dissented.

Scott, J. (dissenting): Plaintiff sues for salary from September 1, 1902, to March 23, 1904, as clerk to the change of grade damage commission. The facts alleged in the complaint present a somewhat unusual case as follows: The change of grade damage commission was created by chapter 537 of the Laws of 1893 for the purpose of passing upon the claims of certain property owners in the twenty-third and twenty-fourth wards of the city of New York who had suffered damage from the change of grades in those wards, and who under existing laws could gain no relief by action. The mayor of the city was authorized to appoint three commissioners to hear such claims, and the corporation counsel was directed to represent and protect the interests of the city. The commissioners were authorized and empowered to appoint a clerk, and it was required that a minute book be kept containing a faithful record of all these proceedings. The act was redrawn and re-enacted as chapter 567 of the Laws of 1894. In this act

the power of the commissioners to appoint a clerk was re-enacted. By section 6 of the latter act it was provided that the awards by the commissioners should become a charge against the city and should be met by the issue of bonds. It was further provided that "The expenses of said commission and the fees of said commissioners shall also be provided for by the issue of like bonds." The fees of the commissioners were fixed by the act. As to the other expenses, which obviously included the compensation of the clerk, it was provided that "A properly verified voucher shall be filed in the finance department, together with a certificate signed by said commissioners, or a majority of them, as to the amount of the other expenses of said commissioners, all of which, including said compensation to the commissioners, shall be payable as provided in section six of this act." (§ 7.) The act was subsequently amended several times, but none of these amendments affect the questions involved in this appeal. On May 5, 1893, the then mayor of the city of New York appointed three commissioners, who on May 10, 1893, appointed plaintiff clerk to said commission, fixing his salary at $2,500 per annum. After the passage of the act of 1894 the mayor reappointed the commissioners and the latter reappointed plaintiff as clerk to the commission, again fixing his salary at $2,500 per annum. As vacancies occurred in the commission by death or resignation the mayor of the city appointed other commissioners. On September 15, 1902, while the business of the commission still remained unfinished and incomplete, all of the three commissioners resigned and no new commissioners were appointed until March 23, 1904. During the interregnum there were no commissioners in office to sign or certify a voucher or certificate as to the amount due plaintiff for salary and consequently no certificate or voucher could be filed in the finance department. When the commission was appointed after the interregnum on March 23, 1904, the plaintiff presented to said commissioners a proper voucher for the payment of his salary from September 15, 1902, and requested that the same be signed and certified to the comptroller, but the commissioners unreasonably, as it is alleged, refused such request. Plaintiff was never suspended, discharged or removed from the position of clerk of said commission, no charges of any kind were ever preferred against him, and no person other than he performed any of the duties of such position. The commission, having finished the work for which it was created, adjourned *sine die* on May 31, 1914. The plaintiff has been paid all the salary from the date of his appointment down to September 1, 1902, and from March 23, 1904, down to the date when the commission ceased to exist. This action is for his salary during the interregnum when there were no commissioners in office. It is shown by the complaint that in 1899 the position of clerk of said commission was duly classified by the municipal civil service commission under the provisions of chapter 370 of the Laws of 1899, known as the White Civil Service Law, and was placed in one of the competitive classes. The principal objection which is urged in support of the demurrer is that under the terms of the act creating the change of grade damage commission it was made a condition precedent to the payment of any of the expenses of the commission

that there should be filed in the finance department a properly verified voucher together with a certificate signed by the commissioners or a majority of them, whereas the complaint expressly shows that this has not been done. In my opinion this objection is answered by the case of *Davidson* v. *Village of White Plains* (197 N. Y. 266). That action arose out of a contract for furnishing a pumping engine purchased by the water commissioners for the use of the village. By the terms of the act under which the commissioners acted it was provided that the money necessary to meet the expenses of the commission should be raised by the sale of bonds and that payments should be made upon accounts and bills presented and duly audited and certified by the commission. The plaintiff, Davidson, requested the water commissioners to audit and certify his bill, but they refused to do so, whereupon he sued the village, and was met by the same objection which is urged here, that his bill had not been audited and certified as required by the statute. This objection was overruled by the Court of Appeals. In the course of his opinion Chief Judge Cullen, who wrote for the court, said: " Though it was the duty of the plaintiff in the first instance, to apply to the board of water commissioners to audit and certify his claim, upon their refusal to comply with the demand he was not restricted to proceedings against the commissioners by mandamus. It may be questioned whether mandamus would lie in case the claim was in dispute. However this may be, such refusal would give a right of action against the village itself." This case has recently been cited and followed by the Federal Circuit Court of Appeals in this circuit. (*American Pipe & Construction Co.* v. *Westchester County*, 225 Fed. Rep. 947, 952.) It is true that in the cases above cited the claims were for work done and materials furnished under contracts, while the present case is for salary, but I am unable to perceive that this makes any difference. All are alike claims against the municipality incurred by a commission authorized to incur them. In the course of his opinion in the *Davidson* case Chief Judge Cullen points out the clear distinction between a case like that which he was then considering and cases like *Dannat* v. *Mayor* (66 N. Y. 585) and *Swift* v. *Mayor*, etc. (83 id. 528) which are much relied upon by the respondent. In each of these cases the department or instrumentality incurring the obligation was itself charged with the duty of making disbursements, the sole duty of the city being to furnish it with the fund out of which the payment was to be made. The same distinction applies to *Fidelity & Deposit Co.* v. *City of New York* (108 App. Div. 263). In the present case the act under which the change of grade damage commission acted expressly provides that the awards and expenses of the commission should be " a charge against " the city. The court at Special Term recognized the force of the *Davidson* case, but deemed it inapplicable because the commissioners were not agents of the city. I am not impressed with the force of this distinction. They certainly were city officers as much as and in the same way that the members of the Court of Claims are State officers. They were appointed by the mayor; paid out of the city treasury and authorized to incur expenses which became, by law, a charge against the city. For the

purpose of incurring such expenses they were certainly agents of the city. Nor is it, as I consider, an objection to plaintiff's right to recover that he does not allege that the municipal civil service commission had not certified on a payroll bearing his name that he had "been appointed or employed or promoted in pursuance of law and of the rules made in pursuance of law." The requirement for such a certificate is first found in chapter 370 of the Laws of 1899.* Plaintiff had been appointed long before that act was passed and no such certificate was required in his case. (*People ex rel. Wilson* v. *Knox*, 45 App. Div. 537, 542.) The question remains whether plaintiff continued to hold office during the interregnum of the commission. I think he did. His office was created and recognized by statute. He was not the appointee of any particular commissioner, nor were his duties confined to such as might be required of him·by any particular commissioner. He was clerk to the commission as a body, and unless removed, he remained clerk to the commission no matter how often its membership changed. During the interregnum while there were no commissioners the office of the commission survived and the vacancies might have been filled at any moment. It may readily be assumed that even during the interregnum there may have been clerical duties to be performed by the clerk. The commission had offices and records and some one should have been in charge. Such duties would have been appropriate for the clerk. It frequently happens in public life that an office becomes vacant and remains so for a longer or shorter period, but it has never, so far as I am aware, been held that the permanent subordinates in such an office are *ipso facto* removed from office during the vacancy. Of course positions which bear a purely personal relation to the appointing power fall when that power ceases to hold office, but that is not this case. The order and judgment appealed from should be reversed, with costs and disbursements, and the demurrer overruled, with costs, with leave to defendant to withdraw the demurrer and answer over within twenty days on payment of all costs. Davis, J., concurred.