STATE *ex rel.* BUTLER *v.* DUGGER, COUNTY SUPERINTEND-
ENT OF PUBLIC INSTRUCTION.

*(Nashville,* December Term, 1937.)

Opinion filed Jan. 15, 1938.

R. R. HAGGARD, of Waynesboro, for appellant.

C. L. BOYD, of Waynesboro, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a petition for mandamus on the relation of H. A. Butler to compel the Superintendent of Education of Wayne county to issue a warrant in favor of relator for $45, claimed to be due relator under a contract with the County Board of School Commissioners for the operation of a bus. The chancellor dismissed the petition, and the relator has appealed.

The Wayne county schools opened on July 19, 1937. A few days prior to that date the Board of School Commissioners met and, after certain proceedings had, entered into a contract with the relator Butler whereby the latter was to run a school bus over a designated route for the transportation of pupils to and from their homes to the Pinhook school. Butler was to be paid $100 a month.

The relator was the owner of a school bus; having operated the same under contract with the Wayne County Board of School Commissioners for the previous scholastic year. Under this contract of July, 1937, relator began the operation of his bus over the Pinhook school route and continued such operation until Friday, September 10, 1937. On that date he gave notice to the Board of School Commissioners that he would not continue the operation of this bus after Monday, September 13.

Relator declined to continue the operation of his bus because he had received no pay for such undertaking. Defendant Dugger, the County Superintendent of Public Instruction, refused to issue a warrant in relator's favor. Defendant took the position that the contract entered into between the relator and the Board of School Commissioners was illegal by reason of certain provisions of chapter 831 of the Private Acts of 1935, ap-

plicable to Wayne county. Section 11 of that act is as follows:

"That the County Board of School Commissioners herein created shall have the power and authority to enter into contracts and agreements with persons, firms or corporations for the erection, purchase, repair or maintenance of its buildings and property, equipment and supplies, and for any other purpose deemed necessary by the Board of School Commissioners to carry out the provisions of this Act or the general law applicable to public school affairs, or in the proper discharge of the duties imposed by this Act. Provided, that in all cases for the employment of janitors, bus drivers, or for transporting pupils to schools, and in other cases for labor, materials, fuel, equipment or supplies, or the erection, repair or maintenance of any building, part of building, or grounds where the cost shall exceed the sum of One Hundred Dollars ($100.00) no contract shall be entered into or made until after due advertisement of same shall have been made in some newspaper published in such County for three consecutive weeks, setting forth the amount, quality and description of such services, labor, materials, supplies or equipment desired, and the time within which written and sealed bids for same shall be received, and in all cases a cash deposit shall be made with such bids equal to fifteen per centum of the amount bid to guarantee the performance of such contract if awarded, such deposits to be returned immediately to unsuccessful bidders, and the successful bidder when the contract shall have been fully completed; and when such deposit is made with such written and sealed bids, and the Board of School Commissioners at some session shall open same, a quorum being present, such contracts shall in all cases be awarded to the lowest bidder."

After receiving notice from relator that he would discontinue the operation of the Pinhook bus on September 13, the Board of School Commissioners met on that day and passed a resolution which, after a lengthy preamble, continued as follows:

"Now, therefore, it is resolved by this Board that such busses as have been operated heretofore during the present school year be operated for such period as this Board may consider proper and that the right be reserved by this Board to discontinue the operation thereof at any time it should desire so to do, and that such drivers or operators be paid for such service at the rates per day hereinafter set out because of the fact that it cannot now be known how long the funds fixed or allowed in the budget for transportation will last or how many busses can be operated for the term or what busses will be discontinued."

A schedule of *per diem* rates for the different school busses was then set out stating the *per diem* that relator should have for the operation of the Pinhook bus as $5 a day. The resolution directed the County Superintendent, at the end of each week during such time as the busses might be operated, to issue warrants to the several drivers or operators for such amounts as they had earned during the previous week under the schedule. The resolution further directed the chairman of the Board of School Commissioners to enter into contracts with the several drivers or operators pursuant to the resolution. By this resolution the driver or operator of each bus was selected, designated by name, and his compensation fixed.

Later, a contract was entered into between relator Butler and J. W. Copeland, chairman, acting for the

Board of School Commissioners, pursuant to the provisions of this resolution.

We gather from the record that Butler did not operate his bus on September 13. He resumed the operation of the bus on September 14, and continued such operation until September 24. The County Superintendent again declined to issue any warrant in favor of Butler, and on September 24 Butler again stopped running his bus. In this suit Butler only seeks compensation at the rate of $5 a day for the nine school days between September 14 and September 24. No other compensation is herein sought.

After September 24, the Board of School Commissioners met again and passed a resolution which in substance ratified their proceedings on September 13 and directed the County Superintendent to issue warrants to the several drivers and operators for their services from the date of the passage of the resolution of September 13 until September 17, 1937. The County Superintendent was also directed to issue his warrants to the several drivers and operators "for the several amounts due to each of them under their several contracts of employment entered into with this Board and covering the period from the beginning of the several schools to which busses were operated from the beginning of the present school year up to and including September 10, 1937, this Board recognizing and admitting that such bus drivers and operators are entitled to pay for their services for that period and that their several contracts of employment were and are legal and valid."

The County Superintendent continued his refusal to issue warrants to the bus drivers and operators, under any of these resolutions and contracts. This suit was

thereupon filed, involving only compensation for the nine school days between September 14 and September 24.

■ Provisions requiring that public contracts, or public contracts of a certain amount, shall be let only after advertisement and competitive bidding are quite generally upheld and enforced as promoting the public interest. Section 11 of chapter 831 of the Private Acts of 1935 specifically requires that contracts "for transporting pupils to schools" where the costs shall exceed the sum of $100 shall not be entered into until advertisement is made and bids submitted, and "such contracts shall in all cases be awarded to the lowest bidder."

■ The petition in this case recites that the quarterly county court of Wayne county at its July term adopted a budget and made provision for the operation of school busses. Under normal conditions county schools operate for eight months in each year. A contract for the transportation of pupils over this Pinhook school route, the bus to be provided by the operator, would necessarily involve the expenditure of more than $100. Notwithstanding the positive requirement of the statute, the Board of School Commissioners met in July, ignored the statute, and proceeded to make contracts for the operation of several school busses, without advertisement and without any competitive bidding. These contracts were illegal. The County Superintendent properly declined to issue his warrant for the operation of these busses for approximately the first two months of the school year, and there is no effort by relator in the case before us to recover the compensation of $100 a month which the Board of School Commissioners agreed to pay him for this period.

When the relator stopped the operation of his bus on September 13, the Board of School Commissioners might have made an emergency *per diem* contract to cover the period necessary for advertisement and receiving bids by way of entering into a legal contract. The Board of School Commissioners, however, did no such thing. They entered into a contract with the relator, which contract they reserved the right to terminate on any day. Obviously, this contract was not designed as a temporary arrangement, pending advertisement and receipt of bids. The Board of School Commissioners made no effort to comply with the statute, made no advertisement for bids, but on a later date, according to Butler's deposition, October 8, undertook to ratify the proceedings of September 13 and to continue the contract of September 13 indefinitely.

The action of the Board of School Commissioners is a patent effort to evade the provisions of section 11 of chapter 831 of the Private Acts of 1935, and to continue the contracts privately entered into with the operators and drivers of school busses for the remainder of the scholastic year.

The relator seeks to bring this case under the authority of *Savage* v. *Macadam Co.*, 5 Tenn. App., 377, in which this court denied the petition for *certiorari*. That case is no authority here. In that case it appeared that the city of Knoxville, at different times, bought macadam from the defendant company for repair of the city streets and the aggregate purchases exceeded the sum of $500. The city charter provided that contracts involving more than $500 should be let publicly on competitive bidding. It did not appear in that case that an undertaking which would necessarily involve the ex-

penditure of more than $500 was purposely split up in order to avoid the charter limitation.

The deposition of relator taken in this case shows that both he and the Board of School Commissioners were advised of the statutory provision for advertisement and competitive bidding in respect to bus contracts. Nevertheless, the board proceeded in July, 1937, to enter into private contract with the relator, which relator does not now seek to enforce. When the illegality of this private contract was set up, the Board of School Commissioners made no effort to comply with the statute, but made an obvious attempt to evade the requirements of the statute. Such contract made with relator under such circumstances cannot be enforced. 44 C. J., 100; McQuillins Municipal Corporations, Second Edition, section 1290.

It is insisted that chapter 831 of the Private Acts of 1935 is unconstitutional, in that it abridges the contract rights of Wayne county, deprives Wayne county of powers enjoyed by other counties under the General Education Acts, and is therefore an arbitrary and unlawful discrimination against Wayne county. Wayne county is not here complaining, as was Hamilton county in *State ex rel.* v. *Hamilton County,* 170 Tenn., 371, 95 S. W. (2d), 618. The relator has no such interest as will permit him to raise this question.

We do not find it necessary to undertake herein any further construction of chapter 831 of the Private Acts of 1935. Plainly, that act prohibits a contract for transporting pupils to schools, where the cost will exceed $100, except on advertisement and competitive bidding.

The decree of the chancellor is affirmed.